UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 20-113 (DSD/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOSE FELAN, JR. )<br>)<br>Defendant. ) | **POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS** |

Jose Felan is before the Court for sentencing after having pled guilty to one count of arson.  Mr. Felan agrees with the advisory guideline calculations contained in the PSR, namely that the total offense level is 23 and his criminal history category is IV, resulting in an advisory guideline range of 70-87 months.  Applying the sentencing factors outlined in 18 U.S.C. § 3553(a), Mr. Felan respectfully requests the Court to sentence him to the mandatory minimum sentence of 60 months in prison as a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

### I. A SENTENCE OF 60 MONTHS IN PRISON IS A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY TO ACCOMPLISH THE PURPOSES OF SENTENCING OUTLINED IN 18 U.S.C. § 3553(a).

In fashioning a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing, district courts are not only permitted, but are required to consider the history and characteristics of the defendant.  *U.S. v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009).  Factors such as defendant's age, upbringing, medical conditions, prior military service, family obligations, etc. can form the bases for a sentence variance from the advisory guideline range, even though they would not justify a departure.  *Id.,* at 830-831.  The presumption of

1

reasonableness accorded to a sentence within the sentencing guideline range is an appellate presumption, and the sentencing court does not enjoy the benefit of a legal presumption that the guideline sentence should apply. *U.S. v. Aguilera*, 523 F.3d 876, 877 (8th Cir. 2008).

Here the history and personal characteristics of Mr. Felan, his family responsibilities, the nature and circumstances of the offense, the need to avoid unwarranted sentencing disparities with the probationary sentence given to co-defendant Mohamed Abdi, the fact that he has been in custody at Sherburne County Jail for over 15 months by the time he is sentenced and was hospitalized in serious condition after contracting Covid-19 at the jail all support a sentence of 60 months in prison as a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing. Defendant will address each of these points in turn.

### A. MR. FELAN'S HISTORY, PERSONAL CHARACTERISTICS AND FAMILY RESPONSIBILITIES SUPPORT A SENTENCE OF 60 MONTHS IN PRISON.

Mr. Felan is 35 years old. He was born in Eagle Pass, Texas to migrant workers who worked the fields across the United States. Although Mr. Felan's family moved frequently, he spent most of his childhood in Eagle Pass. His parents are still alive and both live in Eagle Pass, although they were divorced in 2009. Eagle Pass is in Maverick County, which is the poorest county in Texas, and is one of the poorest counties in the United States. Mr. Felan's family was very poor. Mr. Felan's mother received food stamps for the family, which was the only way they had enough food to survive. However, even with food stamps, there was never enough food for Mr. Felan and his three siblings. At the end of the month, food in the home ran low, and Mr. Felan oftentimes went to bed hungry.

Although most of the students who went to Mr. Felan's school in Eagle Pass were poor, the Felan family was poorer than most. Mr. Felan remembers attending school with ripped

2

shoes, and being teased by other children because of his shabby clothes. The family never owned a home. They lived in a trailer home on his paternal aunt's property. The trailer had a non-functioning bathroom, which his father was not able to repair due to a lack of money. His father dug a hole in the ground to serve as a toilet for the family to use. In place of a working sink, the family used a Gatorade bucket to hold their water that was used for cooking and cleaning. The trailer also had electrical problems. On one occasion, Mr. Felan's father attempted to fix the electrical problem. In attempting to fix the issues, the wiring was loose and made contact with the underside of the trailer. The electricity shorted out, and the family dog, who was leashed to the bottom of the trailer, was electrocuted and died. The trailer was damaged by sparks caused by the loose wires coming into contact with the underside of the trailer. As a result of the damage, the family was displaced from the trailer for several months, and resided at a local church.

Although Mr. Felan's parents were not physically abusive, they argued almost on a daily basis, which was hard on the children. His father, while present in the home, did not show any interest in raising or being a good role model to Mr. Felan, who was the oldest child. He was an alcoholic who drank daily. Although he was an alcoholic, he continued to work hard, but could not bring in enough money to support the family. He could not read or write, either in English or Spanish, so he could not obtain other employment that would pay a better wage. He did not guide Mr. Felan in any way, and did not provide any discipline when Mr. Felan did something wrong. His mother tried to show interest in Mr. Felan, including disciplining him when he did something wrong, but she had severe depression, and could not provide the guidance that Mr. Felan needed as he was growing up.

To say that Mr. Felan had a difficult childhood is an understatement.  In essence, he was left on his own to fend for himself, without any guidance from his parents.  He began hanging out with the wrong crowd, and getting in trouble in school.  It culminated in Mr. Felan dropping out of school in the 11th grade.  He married his first wife when he was just 17 years old, and had his first child shortly thereafter.

Other district and appellate courts have recognized that a defendant's difficult childhood can be a factor in sentencing a defendant to a sentence lower than the applicable advisory guideline range.  In *U.S. v. Patzer,* 548 F.Supp.2d 612 (N.D. Ill 2008), the district court sentenced the defendant, who was a career criminal, to 13 years in prison on a plea of guilty to two bank robberies.  The defendant's advisory guideline range was approximately 28-34 years in prison.  In justifying a sentence more than 50% less than the low-end of the advisory guideline range, the Court relied in part on defendant's difficult childhood.  The court noted as follows:

> Second, Patzer had a difficult childhood, no doubt made more difficult by the absence of an appropriate diagnosis for his ADHD. The record indicates that his biological family was abusive and unsupportive, relinquishing custody of Patzer to DCFS at the age of 15. … Nevertheless, Patzer is, according to letters from friends and family, basically a good person with a heart who has never, even in the depths of his addiction, physically harmed anyone and who sincerely regrets the choices that have led him here. … He has a trade (machinist and welder).  He has shown that he has the ability to be a productive member of society when he is not abusing drugs. … The Court concludes that the sentence imposed, plus the lengthy term of supervised release, provides ample opportunity for Patzer to receive treatment so that he can be rehabilitated.  *Patzer* at 618.

Like Patzer, Mr. Felan had a difficult childhood.  He grew up very poor in the poorest of counties in Texas.  He never had enough food to eat, and lived in a trailer that did not have a working toilet.  He had to go to the bathroom in a hole that his father had dug for the family

4

because they did not have enough money to fix the toilet. He drank and bathed from water that was kept in a Gatorade jug because there was no working plumbing in the trailer. The family dog was electrocuted when his father tried to fix an electrical problem by himself causing the loose wires to short and electrocute the family dog who was tied to the bottom of the trailer. While his parents were both physically present, they argued almost daily, which put a strain on the family. His father was an alcoholic who drank daily and showed no interest in Mr. Felan. Mr. Felan was allowed to roam the neighborhood without any supervision, started hanging out with the wrong crowd, and dropped out of high school when he was in the 11th grade. He got married shortly thereafter, and had his first child shortly after he got married. His childhood was bad and he was on his own at a very young age.

Mr. Felan has made mistakes in his life, including his actions here which brought him before the Court. While he has made mistakes, he has never physically hurt anyone or acted out in anger against anyone. He knows what he did was wrong, and that he has to pay a price for his actions. However, Mr. Felan respectfully requests the Court to show some leniency to him considering his turbulent childhood in determining a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

Also, see, *U.S. v. Hubbard*, 369 F.Supp.2d 146 (D. Mass 2005) (a sentence of 108 months with an advisory guideline range of 188-235 months in a crack cocaine case appropriate in part because of defendant's traumatic childhood involving abuse, and where he watched three of his siblings die in a fire caused by a fire bomb thrown by his abuser); *U.S. v. Collington*, 461 F.3d 805 (6th Cir. 2006) (family history where defendant's father was murdered in their home when

defendant was nine years old, and then lost his mother to cancer two years later is a factor that warrants a sentence below the advisory guideline range).

Although Mr. Felan had a turbulent childhood and has made mistakes in his life, he has also taken steps to improve his life and the life of his family. He received his GED in 2006 and obtained an Associate Degree in Liberal Arts and Sciences from Rochester Community and Technical College. He met Mena Yousif in 2017 and they were married in December of 2019. When George Floyd was murdered, Ms. Yousif and Mr. Felan were living a good life in Rochester, Minnesota. They were both working at Chipotle restaurants. Mr. Felan started as a line prep cook and cashier and was later promoted to a manager. They have a son together who is almost 2 years old, and a daughter who is 9 months old, and who was born while Mr. Felan has been in custody. He had a bright future with a wonderful family when he got caught up in the emotions surrounding the murder of George Floyd, and in a matter of minutes upended his life by his actions on May 28, 2020.

Mr. Felan does not know if he will ever be able to mend his relationship with Ms. Yousif, but no matter what happens with his relationship with Ms. Yousif, he wants to support his children, both financially and emotionally. He wants to be present in their lives, and wants to teach them to not make the same mistakes he has made in his life. He is truly sorry for his actions, both for the pain it caused the community and the pain and suffering it caused to his family. As Mr. Felan in part wrote to the Court:

> The people I hurt the most were my wife and my two little babies that I often cry for. I put my wife in a predicament and my children in a situation where I cannot father them. My family and those around lost faith in me, especially my wife's family. I hurt and caused damage to them and to myself. I have begun the process of redeeming myself but the process will be long, slow, and painful. I sincerely and profoundly apologize to the

> community of St. Paul for the damage I brought to them that day and would like to say that I am deeply sorry. To the protesters around the country, my message to them is this: violence **is not** the solution. What point is there in hoping for a better society while destroying it at the same time? Your honor, I respectfully and humbly request for leniency in my case. I can do better because I have learned so much from just the trauma of this experience. It has been two years and since then I have re-assessed my decision making and learned that in life things are best achieved in a peaceful manner. Life is too short and precious for violence. Mahatma Gandhi one time said, "Victory attained by violence is tantamount to a defeat, for it is momentary." I swear to live by this profession. You will never see me in this courtroom again. Thank you for your time, your honor. *Letter of Jose Felan, Jr.*

Mr. Felan, while not highly educated, is a smart man. He is fluent in English, French, Spanish, American Sign Language and some Arabic, all of which are self-taught. Over these last two years, he has engaged in self-reflection about what he did on May 28, 2020 and knows that violence is never the solution. If he could take back his impulsive actions of May 28, he would, but he cannot. However, he is on the road to redemption, and will do anything and everything he can to be a good role model to his children. He is a vociferous reader. While at Sherburne County Jail, he has read many self-help books to better himself, and to help prepare him to once again be a productive member of society. When he is released from prison, he wants to open a Mexican restaurant in Minnesota to be close to his youngest children, and also wants to own rental properties in Eagle Pass, Texas with the help of his relatives who live in Eagle Pass.

    We ask the Court to balance Mr. Felan's criminal actions on May 28, 2020 against his history, personal characteristics, family obligations and his sincere commitment to change in arriving at a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing. We respectfully suggest that a sentence of 60 months in prison, a sentence 10 months below the low-end of the advisory guideline range, plus a supervised release

term of 3 years is a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

    **B. THE NATURE OF THE OFFENSE AND THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES BETWEEN MR. FELAN AND HIS CO-DEFENDANT SUPPORT A SENTENCE OF 60 MONTHS IN PRISON.**

There is no excuse for Mr. Felan's actions in this case, and he offers none here. What he did was wrong and he needs to be punished for his actions. However, like his co-defendant Mohamed Abdi and others who were protesting the murder of George Floyd, he got caught up in the emotions of that day, and made the biggest mistake in his life. Mr. Felan did not go to the protest on May 28 intending to set fires in any buildings or to hurt anyone. He got caught up in the rioting and lawlessness he saw that day, and unfortunately decided to participate. For that, he is truly sorry. As Mr. Felan wrote in his letter to the Court:

> The May 28th protest was not a protest at all, it was chaos. I was easily swept away by the motion of the ocean that day and committed a mistake that will live with me for the rest of my life. That day I committed a crime that no business owner can respect. I intentionally set fires to certain places. I was carried away by the monkey-see-monkey-do syndrome. It was random, it was spontaneous, it was stupid.
> *See, Jose Felan letter to Court.*

While not minimizing the seriousness of his actions, it is also important to note the nature and extent of the fires. As noted in the Offense Conduct section of the PSR, Mr. Felan entered both the Goodwill Store and 7 Mile Sportswear Store after they were already broken into and looted, with significant damage already being done to the stores. He went into the back storage rooms of the stores and lit cardboard boxes on fire. He did not light the fires in the main showrooms of the stores, nor did he light the walls or flooring in the back storage rooms on fire. The fires caused damage in the back storage rooms of the stores, but the damage caused by the

fires was limited.  He did not use accelerant to start the boxes on fire at the 7 Mile Sportswear Store, so most of the fire damage there was caused by the sprinklers.  Mr. Felan should not and cannot be held liable for the damage the looters did by ransacking the stores.  He also assisted Mohamed Abdi in lighting a garbage can on fire at Gordon Parks High School by providing the accelerant that Mohamed Abdi used to light an article of clothing on fire that was then used to light a garbage can on fire.  While Mr. Felan provided the accelerant used to light the fire at Gordon Parks High School, Mr. Abdi is the person who lit the garbage can on fire.  Again, the damage to the school as a result of the fire was limited.

Mr. Abdi's advisory guideline range was 37-46 months in prison.  This Court did not sentence Mr. Abdi to prison, instead putting him on probation for 5 years.  Mr. Felan does not question the Court's sentence in Mr. Abdi's case.  He also does not dispute that he should receive a significantly longer sentence than Mr. Abdi.  However, as with Mr. Abdi's case, Mr. Felan did not go to the protest on May 28 with the intent of committing any crime, and definitely did not go there intending to set fires in buildings.  He did not bring accelerant with him, but obtained it from a store on University Avenue during the protests.  He got caught up in the emotion and chaos he observed, and made the mistake of his life for which he is going to have to live with for the rest of his life.  His actions in setting the fires, while serious, were limited in scope.  A sentence greater than the mandatory minimum sentence of 60 months in prison would create unwarranted sentencing disparities between Mr. Felan and Mr. Abdi.  Therefore, a sentence of 60 months in prison followed by a supervised release term of 3 years is a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

### C. MR. FELAN'S INCARCERATION AT SHERBURNE COUNTY JAIL FOR OVER 15 MONTHS UNDER COVID-19 RESTRICTIONS AND WHERE HE CONTRACTED A SERIOUS CASE OF COVID-19 REQUIRING HOSPITALIZATION SUPPORT A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE.

Mr. Felan has been incarcerated at Sherburne County Jail since April of 2021. By the time of the sentencing hearing, he will have been at Sherburne County for over 15 months. It is never pleasant to be serving any time at Sherburne County Jail, but it has been even more oppressive as a result of Covid-19. The jail has been on periodic lockdown as a result of the pandemic, where inmates are locked down in their cells for 23 hours. Despite these precautions intended to avoid Covid outbreaks at the jail, Mr. Felan tested positive for Covid-19 on December 25, 2021. Defense counsel obtained the medical reports from the Sherburne County Jail, and with the consent of Mr. Felan provided a copy to probation officer Kiah Smith on March 13, 2022. The records reflect that after Mr. Felan tested positive for Covid, his physical condition over the next week continued to get worse. He was unable to eat, and he was running a fever. He also started to have difficulty breathing, and his oxygen saturation level dipped below 90. His condition continued to deteriorate to the point that it was difficult for Mr. Felan to walk to the jail clinic. On January 2, 2022, Mr. Felan was transported to the hospital. He was hospitalized from January 2, 2022 through January 15, 2022. During his hospitalization, his oxygen levels continued to drop drastically. He also developed a blood clot in his calf, and had similar pain in his left arm. The doctors at the hospital were worried that he could develop a blood clot in his arm that would travel to his lungs or heart and be fatal.

With treatment, including taking Eliquis to prevent further blood clots, Mr. Felan began to recover. He was discharged from the hospital on January 16, 2022 and returned to Sherburne

County Jail. Although he was recovering, he still had trouble walking throughout the jail, because any exertion would reduce his oxygen saturation levels. Anytime he would walk upstairs or walk longer than a short distance, he would have trouble breathing, and had to use a wheelchair to get around. He was prescribed Eliquis to be taken in jail to prevent further blood clots, and is still taking the medication. Thankfully, his blood pressure, which during the height of his illness, had dropped dangerously low, has recovered. His breathing has also gotten better, although he is not completely healed yet.

During this time, Mr. Felan's family could not have any contact with him, and could not even be told where he was hospitalized. They could not talk to the hospital staff to get updates on his condition. The undersigned contacted Assistant U.S. Attorney Melinda Williams to see if she could get updates from the U.S. Marshal's Office regarding Mr. Felan's condition. Ms. Williams was able to give regular updates to defense counsel on Mr. Felan's condition that she obtained from the U.S. Marshal's Office, which was comforting to Mr. Felan's family. Defense counsel, Mr. Felan and Mr. Felan's family are grateful for the compassion Ms. Williams showed to Mr. Felan and his family.

Mr. Felan is now better, although he is not 100%. Prior to his incarceration, Mr. Felan was a healthy man, who had no preexisting conditions. Now, he is worried that he will have lingering problems that may be permanent as a result of contracting Covid-19 while incarcerated at the Sherburne County Jail.

Mr. Felan respectfully requests the Court to consider his lengthy incarceration at Sherburne County Jail, and the pain and suffering he incurred as a result of contracting Covid-19,

along with the other sentencing factors present here in determining a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

## II. CONCLUSION

"Seek wisdom to temper justice with compassion" is a phrase accompanying a sculpture of the Angel of Mercy speaking to Lady Justice at Cumberland School of Law in Birmingham, Alabama.  Mr. Felan requests this Court to do just that:  exercise justice tempered with mercy.

For the foregoing reasons and those to be set forth prior to sentencing, Mr. Felan respectfully asks this Court to sentence him to 60 months in prison followed by a term of supervised release of 3 years.  In addition, Mr. Felan requests the Court to recommend that he be incarcerated in a facility in Minnesota or as close to Minnesota as possible so he can be near his children who live with their mother in Minnesota.

Dated:  July 7, 2022                                         Respectfully submitted,

                                                                                **SICOLI LAW, LTD.**


                                                                                By: /s/ Robert D. Sicoli
                                                                                        Robert D. Sicoli
                                                                                Attorneys for Defendant
                                                                                2136 Ford Parkway #117
                                                                                Saint Paul, MN 55116
                                                                                Telephone: (612) 871-0708
                                                                                Reg. No. 178238