UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-113(1) (DSD/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING** |
| v. | |
| JOSE A. FELAN, JR., | |
| Defendant. | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Emily Polachek and Melinda Williams, Assistant United States Attorneys, hereby submits its position with respect to sentencing of Defendant Jose Felan, Jr. For the reasons discussed below, the Government recommends a term at the high point of the Guidelines of 87 months' imprisonment and 3 years of supervised release as a sentence that is sufficient but not greater than necessary.

## RELEVANT FACTS

The Government agrees with and incorporates by reference the facts from the Offense Conduct section of the Presentence Report (ECF No. 140, ¶¶ 8–31), as well as the factual basis from the Plea Agreement.

I.      Felan Commits At least Three Arsons on University Avenue

In late May 2020, the murder of George Floyd led to widespread protest in the Twin Cities area. On the evening of May 28, 2020, Felan, a resident of Rochester, Minnesota, went to the Midway neighborhood in St. Paul, Minnesota, and joined others in mindless destruction against innocent neighborhoods and small businesses through arson, violence, and looting.

Felan committed at least three arsons on the evening of May 28, 2020, and is suspected of having started fires in three additional buildings. The arson that Felan has pleaded guilty to involves a fire at the Goodwill retail store at 1239 University Avenue West. Shortly before 6:00 p.m. on May 28th, surveillance video from the Goodwill retail store caught Felan and his wife entering the retail store, which had been looted by others. The couple went to the storeroom where donated items from the community were waiting to be processed. Using one of the several containers of liquid accelerant that he was carrying, Felan doused a stack of unfolded cardboard boxes. He then started a fire using a lighter and walked away as the boxes started to burn.




Figure 1 (above): surveillance footage of FELAN pouring liquid onto cardboard boxes.

Figure 2 (right): Close-up view of Figure 1.




Figure 3 (above): surveillance footage of FELAN lighting the soaked cardboard on fire.

Figure 4 (right): Close-up view of FELAN in Figure 3.

Within five minutes of leaving the Goodwill store, Felan and his wife walked to Gordon Parks High School, located at 1212 University Avenue West in St. Paul. Felan and his co-defendant, Mohamed Abdi then set fire to Gordon Parks High School. PSR ¶ 15. Surveillance footage from high school showed Felan and Abdi breaking the glass on a cafeteria door that faced the sidewalk. Felan provided Abdi with accelerant, which Abdi used to start a fire inside the cafeteria. Felan handed Abdi an article of clothing, which the two doused in accelerant and fed to the fire. The two then left the fire burning in the school. Gordon Parks High School suffered $34,028 in damages as a result of the defendants' conduct.

A couple of hours later, Felan and his wife were again caught on surveillance footage at a small store called 7 Mile Sportswear, located at 590 University Avenue West. Once again, Felan proceeded through the looted storefront to the back room where cardboard boxes were stored. Felan set fire to a cardboard box and then spent several minutes emptying additional boxes and feeding them to the healthy flames. As the fire grew, the store's sprinkler system was triggered and Felan and his wife fled the scene.



## II.    Felan and Yousif Flee to Mexico, Prompting a Multistate Manhunt

On June 5, 2020, the ATF issued a press release asking for the public's assistance in identifying individuals caught on the surveillance cameras at the Goodwill. On June 8th, Felan was identified. That evening, Felan was charged by complaint with arson and the Court issued a warrant for his arrest. Through investigation and other warrants, the Government learned that Felan and Yousif (who was pregnant at the time) had fled Minnesota and were likely heading for Mexico, where Felan had family. What followed was hundreds of hours of work around the clock by law enforcement in Minnesota, Kansas, Missouri, Oklahoma, and Texas to stop Felan before he crossed the border into Mexico. Nonetheless, with help from Yousif and members of Felan's family, the couple crossed the border. Although Yousif set no fires, she was charged with being

5

an accessory after the fact after she took actions to thwart investigators searching for Felan.

Felan and Yousif remained hidden in Mexico for approximately eight months. On February 14, 2021, after receiving a civilian tip, Felan and Yousif were arrested. In the meantime, a federal grand jury charged Felan with the three arsons described above in a Superseding Indictment that was returned on July 23, 2020. Felan entered a timely guilty plea to one count of the Superseding Indictment on February 24, 2022. The Government now recommends that the Court sentence Felan to 87 months' imprisonment, followed by three years of supervised release.

## ARGUMENT

### I. THE U.S. SENTENCING GUIDELINES CALCULATIONS

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Government agrees with the U.S. Probation's calculation of the applicable Sentencing Guidelines as set out in the PSR. PSR ¶¶ 40–49. Pursuant to that calculation, Felan's calculated total offense level is 23 and criminal history category is IV, resulting in an advisory Guidelines range of 70–87 months' imprisonment, to be followed by 1–3 years of supervised release. PSR ¶¶ 93, 97. Felan is also subject to a mandatory minimum of 60 months' imprisonment. PSR ¶ 92.

## II.   THE 18 U.S.C. § 3553(a) FACTORS

A sentence at the high end of the Guidelines is appropriate in this case upon consideration of the factors enumerated in 18 U.S.C. § 3553(a).  The Government disagrees with Felan's position that his impoverished upbringing justifies a downward variance to the mandatory minimum of 60 months.  Moreover, a sentence of 60 months fails to account for the scope of Felan's actions, including the fact that he involved his pregnant wife and numerous family members in his criminal conduct.

### A.   The Nature and Circumstances of the Offense.

This offense was both serious and senseless.  The arson took place on the heels of the murder of George Floyd.  Felan took advantage of the chaos that ensued to engage in conduct that was lawless, dangerous, and destructive.  While no arson is justified or acceptable, Felan's choice of targets is especially troubling.  Goodwill is a well-known nonprofit organization that helps local communities in several ways, chiefly by serving those with barriers to employment.  Felan started a fire in the storeroom where donations from people in the community were being stored.  Felan's disregard for Goodwill's philanthropic mission and the generosity of the community is unacceptable.  Gordon Parks High School also serves a high-needs community.  The school receives Title I funding as a school with a high incidence of poverty and homeless students.  Felan's actions violated those students' place of learning and diverted funding that should have gone to their education.  And 7 Mile Sportswear is

an independently owned store, not a chain with a corporate structure that could easily absorb the loss of one store.

Additionally, Felan's sentence should reflect the seriousness of his decision to flee to Mexico to avoid prosecution. Not only did Felan waste Government resources, but he involved others in his criminality. He had his wife lie to police on his behalf, resulting in federal charges against her for becoming an accessory after the fact. And he asked for help from his mother, brother, and other family, subjecting each of them to possible prosecution in other jurisdictions.

### B. The History and Characteristics of the Defendant.

The Government submits that the PSR accurately and adequately describes the Felan's criminal history, personal history, and characteristics. To be sure, Felan had a difficult childhood, but he was fortunate to have two supportive parents and little history of substance abuse. When compared to the out-of-district cases Felan cites (ECF No. 143 at 4–5),[1] his background certainly fails to justify a downward variance in this case.

---

[1] *Cf. United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006) (noting that one of the defendant's parents was murdered in their home and the other died of cancer before the defendant reached age twelve); *United States v. Patzer*, 548 F. Supp. 2d 612, 618 (N.D. Ill. 2008) (noting that the defendant's "biological family was abusive and unsupportive, relinquishing custody" of the defendant at age 15 leading to "repeat periods of commitment to an institution" for psychological difficulties); *United States v. Hubbard*, 369 F. Supp. 2d 146, 147–48 (D. Mass. 2005) (noting that "the defendant's childhood presents one of the most appallingly traumatic scenes the court has encountered in over twenty years on the bench").

Also weighing against a downward variance and in favor of a sentence at the high end of the Guidelines is Felan's extensive criminal history. As the Court can see in the PSR, Felan's criminal acts began as a juvenile. PSR ¶ 53. At age 18, Felan was sentenced to 81 months by a court in Olmstead County for conspiring to sell cocaine. PSR ¶ 58. As in this case, Felan involved his then-wife in his offense. *Id.* Only a year after his sentence expired for that offense, Felan shoplifted $150 from a Rochester Kmart, and has yet to make restitution in that case. PSR ¶ 61. And in June 2015, Felan was convicted of the federal offense of Conspiracy to Transport Illegal Aliens. PSR ¶ 62. Felan was initially sentenced to 10 months in prison but served an additional 31 months after he repeatedly violated the conditions of his supervised release. PSR ¶ 62. The instant offense occurred just eight months after Felan completed his sentence for this last federal offense. This criminal history shows that Felan will not be easily deterred from his criminal lifestyle.[2]

### C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, Deterring Crime, and Protecting the Public

A within-Guidelines sentence of 87 months is also necessary to encourage specific and general deterrence, and a supervised release term of 3 years will ensure that Felan receives oversight as he transitions to a law-abiding lifestyle following prison.

---

[2] Indeed, even the responsibilities of family and fatherhood failed to encourage law-abiding behavior—in between custodial sentences, Felan fathered seven children with five different women, three of whom he was married to. PSR ¶¶ 71–74.

A lengthy sentence of 87 months is necessary to deter Felan from further unlawful acts. His long criminal history shows that Felan has no compunction about breaking state and federal laws. For his past criminal conduct, Felan has received sentences involving multiple years of confinement, including a sentence of 81 months' imprisonment. Yet none of these prison terms has successfully deterred Felan from recidivating. Additionally, a substantial sentence will act as a general deterrent to those who would use crisis and chaos for their own ends. *See Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) ("Congress specifically made general deterrence an appropriate consideration . . . and [the Eighth Circuit has] described it as 'one of the key purposes of sentencing.'" (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).

D.     **Need to Avoid Unwarranted Sentence Disparities**

An 87-month sentence would fall within the median of sentences that have been given to other defendants convicted of rioting on or about May 28, 2020. *See, e.g.*, *United States v. Edwards*, No. 20-cr-282 (PJS/ECW) (D. Minn. Dec. 29, 2021), ECF No. 199 (sentencing a defendant who damaged and set fire to multiple buildings to 100 months' imprisonment); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL) (D. Minn. Aug. 16, 2021), ECF No. 123 (imposing a sentence of 105 months for a defendant who started a fire in a store after pouring lighter fluid on boxes); *United States v. White*, No. 20-cr-173 (WMW) (D. Minn. June 28, 2021), ECF No. 49 (imposing a 72-month custodial sentence on a defendant who started a fire in the back room of a car rental agency);

*United States v. Ziegler*, No. 20-cr-188 (SRN) (D. Minn. Feb. 12, 2021), ECF No. 54 (imposing a 60-month sentence on a defendant who, with his co-defendant Henderson, threw Molotov cocktails into a county building); *United States v. Henderson*, No. 20-cr-146 (SRN/BRT) (D. Minn. Dec. 10, 2020), ECF No. 48 (sentencing a defendant to 78 months' imprisonment after he, with his co-defendant Ziegler, threw Molotov cocktails into a county building). Felan's sentence should fall on the higher end of this spectrum at 87 months because, like Edwards, Felan damaged multiple buildings and, like Rupert, traveled to St. Paul to engage in that destructive conduct. Indeed, Felan's conduct was even more egregious in that he then fled the jurisdiction, recruited others to his criminal activities, cost the Government significant resources to get him before this Court.

## III.  RESTITUTION

The parties have agreed that the Court order Felan to be jointly and severally liable with co-defendant Abdi for restitution to Gordon Parks High School. The Court has ordered restitution to Gordon Parks in the amount of $34,028. ECF No. 126 at 5. Additionally, the Government requests that the Court impose a restitution order of $5,000 on Felan for unreimbursed damage caused to the Goodwill retail store. Finally, the Government anticipates moving for an award for restitution for the unreimbursed damage caused to the 7 Mile Sportswear store, but requests additional time to ascertain the specific amount of that request.

## CONCLUSION

Absent any other motions, the Government recommends that the Court impose a Guidelines sentence of 87 months imprisonment, followed by 3 years of supervised release.

Dated: July 22, 2022

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Emily Polachek*

BY: EMILY POLACHEK
MELINDA WILLIAMS
Assistant U.S. Attorneys